Diane M. SMOLAR–HUTTON, Executrix of the Estate of Roger T. Smolar, deceased, Plaintiff,

v.

BEECH AIRCRAFT CORPORATION, a Delaware Corporation, t/a Beechcraft, Defendant,

and

BEECH AIRCRAFT CORPORATION, a Delaware Corporation, Defendant/Third Party Plaintiff,

v.

RONSON AVIATION, INC. and United States of America, Third Party Defendants.

Civ. No. 84–3048(GEB).

United States District Court, D. New Jersey.

Nov. 10, 1986.

Richard Stone, Torts Branch, Civil Div., U.S. Dept. of Justice, Washington, D.C., for U.S.

Jerold Allen, Soffian & Allen, Haddon-field, N.J., for plaintiff, Diane M. Smolar-Hutton.

John D. Clemen, Shanley & Fisher, P.C., Morristown, N.J., for defendant Beech Aircraft Corp.

Anthony P. LaRocco, Costello & Shea, New York City, for Ronson.

## OPINION

BROWN, District Judge.

This survival and wrongful death action arises from the crash of a Beech C24R Sierra aircraft on August 15, 1982. The pilot-decedent, Roger T. Smolar, and his two passengers died in the crash. Plaintiff, decedent's widow and the executrix of his estate, filed suit on July 26, 1984 against defendant Beech Aircraft Corp. [Beech] alleging negligence and strict liability in manufacture of the aircraft.

Beech, in turn, filed a third-party complaint against Ronson Aviation, Inc., [Ronson] the owner of the aircraft from whom decedent had rented it.

Beech has also impleaded the United States, seeking contribution and/or indemnification. Beech alleges that the Federal Aviation Administration [FAA] failed to enforce compliance with Beech's own "Service Instruction", which provided for the installation of a "fuel selector stop" to prevent misuse by pilots of the fuel selector valve on the aircraft. Apparently, only the FAA can require users of the aircraft, such as defendant Ronson, to make the modifications required by the Service Instruction, by way of an "Airworthiness Directive" [AD]. The FAA issued such a directive with respect to the fuel selector valve in March 1985, some six years after declining Beech's initial request for one in October 1979, which the FAA declined.

The United State's motion to dismiss for lack of subject matter jurisdiction, asserting that under the "discretionary act" exception of the Federal Tort Claims Act, 28 U.S.C. § 2680(a), [FTCA] such claims are barred. Beech argues that the FAA has no discretion "to ignore safety recommendations made by aircraft manufacturers", but instead has a statutory duty under the Federal Aviation Act, 49 U.S.C. § 1301 *et seq.*, to issue an AD when a manufacturer requests one for safety reasons. In 1979, the FAA apparently felt that although the service instruction was a desirable change, that there was not a sufficient basis to require all owners to make the change at their cost.

Beech argues that when the FAA finally issued the AD, it decided that the compliance cost would be small, in contradiction to its 1979 determination.

*Conclusion*

It is clear that the FAA's decision not to issue an AD falls within the discretionary function exception of the FTCA. Defendant Beech reads the Federal Aviation Act too broadly and the discretionary function exception too narrowly.

Beech's claim that the issuance of ADs upon request by aircraft manufacturers is statutorily mandated is not supported by any decided case. Its only argument is that 1) since by statute the FAA is required to promote air safety through the promulgation of minimum safety standards, and 2) since neither the statute nor the regulations speaks in terms of "discretion", that no such discretion exists. However, a reading of the plain language of 49 U.S.C. § 1421, the enabling statute, and 14 C.F.R. §§ 21.277 and 39, the applicable regulations, makes it clear that safety regulations like the AD are within the FAA's discretion. To hold otherwise would effectively give aircraft manufacturers absolute power with regard to safety modifications like Airworthiness Directives.

The cases construing 28 U.S.C. § 2680(a) hold overwhelmingly that agency regulation power such as the one authorizing ADs falls at the "planning" or "policy" level of decisionmaking. *Dalehite v. United States*, 346 U.S. 15, 73 S.Ct. 956, 97 L.Ed. 1427 (1953); *Merklin v. United States*, 788 F.2d 172 (3d Cir.1986); *Baxley v. United States*, 767 F.2d 1095 (4th Cir. 1985). The leading cases in this area are *Dalehite*, and *United States v. Varig Airlines*, 467 U.S. 797, 104 S.Ct. 2755, 81 L.Ed.2d 660 (1984), and Beech's attempts to distinguish them must fail. The principles enunciated in *Dalehite* over three decades ago continue to be applied with great force in the recent cases including the ones involving the FAA like *Varig* and *Baxley*. The discretionary function "includes determinations made by ... administrators in establishing plans, [and] specifications ... [W]here there is room for policy judgment and decision there is discretion." *Dalehite*, 346 U.S. at 35–36, 73 S.Ct. at 968.

 *Varig* and *Baxley* have applied these principles to situations quite similar to the instant case. In *Varig*, a consolidation of two cases, plaintiffs sued the U.S.A. for the FAA's "wrongful issuance" of a safety compliance certificate when it was subsequently discovered that the cause of the airplane crashes involved was defective equipment. In *Baxley* the claim was that the FAA was negligent in not having yet promulgated proposed regulations to govern ultralight aircraft at the time of the accident in question. In both cases the courts held that it was not shown that the regulation sought was statutorily mandated, but was, in fact, a policy decision left to the discretion of the FAA. Similarly, here, Beech has failed to show why the issuance of an AD is any different from the policy decisions of *Varig* and *Baxley*. I find that the decision to issue, on a nationwide basis, an Airworthiness Directive amending a type certificate and effectively grounding all aircraft of a certain model to be a policy decision and not a ministerial act.

If the FAA were required to issue an AD every time one was requested, then the entire notice-and-comment rulemaking procedure established by the Administrative Procedure Act would be rendered superfluous in this area. This is not the result which Congress had in mind when enacting the FTCA; the purpose in enacting 28 U.S.C. 2680(a) was to encourage agency freedom in making policy without the spectre of second-guessing by the judiciary.

Thus, Beech's claim against the United States of America must be dismissed pursuant to 28 U.S.C. 2680(a).